# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **APRIL K. BARNETT,** | Case Number: |
| **Plaintiff,** | |
| vs. | 1:11-cv-01608-RBP |
| **JP MORGAN CHASE BANK, NATIONAL ASSOCIATION, formerly CHASE HOME LOAN SERVICING, LLC,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

## AMENDED COMPLAINT

COMES NOW the Plaintiff April Barnett, and files herewith her amended complaint as follows:

## STATEMENT OF PARTIES

1. Plaintiff April K. Barnett is a resident of Talladega County, Alabama and is over the age of nineteen (19) years.

2. Defendant JP Morgan Chase Bank, National Association, formerly Chase Home Loan Servicing, LLC (hereinafter "Chase") is a foreign corporation doing business in Talladega County, Alabama.

## JURISDICTION AND VENUE

3. Jurisdiction is proper in this Court because the parties to this action are diverse and the amount in controversy exceeds $75,000.

4. Venue is proper in this District because the wrongdoing complained of occurred in Talladega County, Alabama, the Plaintiff resides in Talladega County, Alabama, Defendant is conducting business in

1

Talladega County, Alabama, the subject real property is located in Talladega County, Alabama and Talladega County, Alabama is within this District and Division of the United States District Court for Alabama.

## STATEMENT OF FACTS

5. In May of 2007, April L. Kennedy (n/k/a) April K. Barnett ("Plaintiff"), purchased a home located at 101 Karian Ct. Oxford, Talladega County, Alabama 36203 (the "Subject Property").

6. Plaintiff made approximately the first six or seven payments to ERA King, when she was noticed that the 1st mortgage had been sold. Further payments were made to Chase Home Loan Servicing, LLC ("Defendant" or "Chase").

7. The 2nd mortgage was sold to CCO n/k/a RBS Bank.

8. On June 14, 2010, the Subject Property burned to the ground.

9. The home was current on both mortgages and insurance was fully paid at the time of the fire with a policy from State Farm Insurance Company.

10. Plaintiff notified Defendant of the loss, that they were fully insured and made their normal monthly payment for June 2010.

11. Plaintiff and State Farm made subsequent calls to Defendant, requesting a 10-day payoff.

12. After providing the payoff amount, Defendant instructed Plaintiff not to make the July 2010 payment because it would be included in the payoff.

13. Plaintiff did not make the July 2010 payment, as instructed by Defendant.

14. During the months of July and August, Defendant called Plaintiff at home and at work in an attempt to collect past due payments, despite Plaintiff informing them each time that the house was lost in the June

2010 fire and that State Farm had obtained a payoff and they would be receiving the payoff funds in due course.

15. On or about August 27, 2010, Defendant sent an "Intent to Foreclose" letter to Plaintiff for failure to make her July 2010 payment.

16. Plaintiff called Defendant explaining that State Farm was issuing a check to pay off the loan.

17. On August 31, 2010, pursuant to the 10-day payoff, State Farm sent the requested funds directly to Defendant with instructions to pay off the Plaintiff's mortgage.

18. Defendant negotiated the check within two weeks of receipt.

19. On or about August 31, 2010, State Farm also sent a check to CCO/RBS Bank to pay off the 2nd Mortgage, pursuant to a 10-day request.

20. CCO/RBS Bank negotiated the check, immediately recorded a satisfaction of their mortgage in Talladega County, and reported the debt as paid on the Plaintiff's credit report.

21. Sometime during this period, Plaintiff became pregnant with child.

22. In September 2010, Plaintiff went online and checked the balance of the 1st Mortgage with Defendant. The online account showed the entire balance still due and payable.

23. Plaintiff called Defendant disputing the credit reporting and tried to determine why the mortgage was still listed as having a balance due. Defendant was unable to respond to the inquiries.

24. Defendant continued to call Plaintiff at home and work, asking about her "past due account" and when she intended to bring it current, despite having received and negotiated the payoff funds.

25. During these conversations, Plaintiff inquired as to why they continued to harass her about an account that was paid off. Defendant could not provide an explanation.

26. Defendant finally explained away their negligence by telling Plaintiff that they had not previously applied State Farm's check, because they did not know how to apply the funds, despite State Farm complying with Defendant's payoff instructions.

27. At the time that Defendant claimed that it previously did not know what to do with the funds, Defendant requested that Plaintiff give Defendant written instructions to pay off the loan and provided Plaintiff with a fax number to fax the request to Defendant. Plaintiff promptly complied.

28. Within a short time, no more than a few days to a couple of weeks, Plaintiff received another collection call. On that call, Plaintiff was told that Defendant never received her fax.

29. This prompted Plaintiff to send yet another fax, this time to a new number provided by Defendant.

30. Plaintiff explained yet again that the home had been paid off in August 2010 by State Farm after the fire loss.

31. Despite repeated contacts with Defendant and despite the fact that The Defendant was paid in full for its mortgage, Plaintiff continued to receive collection calls on a regular basis for the next 90 days.

32. Around November, 2010, Plaintiff went to see Mike Simpson at Farmers & Merchants Bank about a mortgage. Mr. Simpson instructed the Plaintiffs to check with the Probate Court in Talladega County and told them he could not give them loan until The Defendant had released the first mortgage on the property. Upon checking with the Talladega Probate Court, the Plaintiffs found that the mortgage had not been released. This was almost four months after The Defendant had negotiated State Farm's payoff check.

33. On or about December 2, 2010 Plaintiff received a letter from the Defendant acknowledging that they had received the insurance check, but were unable to pay off the loan due to a past due balance on her account.

34. Plaintiff again called the Defendant to inquire about the contents of the December 16, 2010 letter and was told that roughly Eight

4

Thousand Dollars ($8,000) was needed to bring the loan current before it could be paid off.

35. On or about December 16, 2010 Plaintiff received a second letter from the Defendant stating that Fannie Mae had denied her request to accept the insurance claim funds in settlement of her mortgage loan and instructed her to contact the Chase Loss Mitigation department and request to have a deed in lieu processed.

36. The ongoing stress, worry, concern and uncertainty created by the Defendant's failure to apply the payoff to the mortgage and their ongoing threats in the collection calls to foreclose on the property caused Plaintiff severe emotional distress.

37. In December of 2010, Plaintiff lost the child she was carrying to a miscarriage due to the stress caused by the Defendant related to the threats of foreclosure on her home and the ongoing and repeated instances of collection calls after the Defendant had been paid in full for the mortgage by State Farm.

38. The miscarriage prompted the Plaintiff to seek counsel.

39. On December 20, 2010, Plaintiff retained Bruce Rice to help resolve the issue of the unapplied payment to the Defendant.

40. On December 21, 2010 Mr. Rice sent a letter to Lanier Jeffrey with Chase enclosing an authorization for release of information and informing them of his representation of Plaintiff and that all further correspondence should be directed to his office.

41. On December 29, 2010, Mr. Rice spoke with Mike Anderson in Chase's collection department. Mr. Anderson instructed Mr. Rice to send a letter to the Loss Draft Payoff Department instructing them to apply the check to pay off the mortgage, and that the matter would be resolved within two (2) days.

42. On December 30, 2010, Mr. Rice faxed a letter, signed by Plaintiff, requesting the Defendant to apply the insurance check as instructed by Mr. Anderson and heard nothing further from the Defendant.

43. On January 12, 2011, Mr. Rice contacted the Defendant again and spoke with several representatives before being transferred to Ryan Evans in Chase's Customer Service Department. Mr. Evans instructed Mr. Rice to Chase's Research Department.

44. On January 13, 2011, Mr. Rice sent a third letter to the Defendant, this time to their Research Department, as instructed by Mr. Evans, explaining the events of the past four months and again requesting that the insurance check be applied and the loan paid off.

45. On January 28, 2011, the Defendant sent a letter to Plaintiff, signed by Lanier Jeffrey, stating that the insurance check was applied and that the mortgage loan was paid in full as of January 27, 2011.

46. On February 2, 2011, Mr. Rice sent a final letter to the Defendant requesting that they notify him when the mortgage satisfaction would be filed. Chase did not respond.

47. On February 16, 2011, a Corporate Cancellation was recorded with the Talladega County Judge of Probate's Office, six (6) months after receipt of the funds.

48. Plaintiffs were now halfway complete with rebuilding the home they had lost, using insurance funds that were allocated for lost furnishings and belongings, personal savings and wages. However, Plaintiffs needed a mortgage to complete the home and to furnish it.

49. Upon being told that the payoff had been applied to their account and the mortgage issue was resolved the plaintiffs for a mortgage online with Lending Tree.

50. Within days they were bombarded by lenders looking to make a loan.

51. On or about January 27, 2011, the Plaintiffs began working with Michael Saltzman at LSI Lending in Georgia.

52. Mike had reviewed their application, and offered a loan for 4.1% on the property.

6

53. On or about February 17, 2011, Mr. Saltzman called back and withdrew the offer, based on a "foreclosure" reported on Plaintiff's credit.

54. The foreclosure reported on the Plaintiff's credit report turns out to be the 1st Mortgage on the subject property that was "satisfied" by State Farm with Chase in August of 2010.

55. Despite the fact that the Defendant sent the Plaintiff a copy of the release and satisfaction, they were continuing to report to the credit reporting agencies that the loan was in foreclosure.

56. Mr. Saltzman explained that he could go ahead and process the loan, just as soon as Plaintiff could get this blemish removed from her credit, but the best he could do on a rate now, would be 6.8% because he now "knew" of the foreclosure, even if it got resolved.

57. Mr. Saltzman went on to explain that the difference in rate, would amount to roughly Three Hundred Dollars ($300) a month, for thirty (30) years, or One Hundred Eight Thousand Dollars ($108,000).

58. Plaintiff and her family moved into the rebuilt home in March of 2011.

59. The home is currently unfurnished because the Plaintiff lost everything in the fire and was forced to use all funds paid by State Farm to replace furnishings and personal effects to complete construction.

60. The Plaintiff, her husband and three children are now living in a mostly unfurnished home.

61. In March of 2011, Plaintiff went to Lowe's to purchase a washer and dryer. Without funds to pay in full, she applied for a Lowe's Credit Card, but was again denied due to the foreclosure on her credit report, from Chase Home Mortgage Servicing.

62. As of the date of filing the original complaint, the Defendant was still reporting the foreclosure on credit report and still have been unable to access funding for a mortgage unless they agree to pay an interest rate greatly increased due to the Defendant's reporting of this account.

63. Chase did not correct its inaccurate credit reporting until after this lawsuit was filed, 10 months after it received the payoff funds.

64. Plaintiffs allege the defendants placed upon their credit report information which the defendants knew was false and did so maliciously with the specific intent to harm the plaintiffs, wantonly, recklessly or negligently depending on evidence adduced at trial.

65. The plaintiffs allege that any foreclosure was improper and illegal because the Defendant had been paid in full and under the law of Alabama, commonly referred to as the "devolution statute" the tender of full payment by the borrower defeats the mortgage and any right to further payment of interest, fees or other charges thereunder.

66. The plaintiffs allege that the defendant failed to apply their payments when made and as required in the uniform covenants of the mortgage addressing the application of payments under the terms of the mortgage.

67. The plaintiffs allege that the defendant failed to apply their payments when made and as required within the industry and under controlling law including Regulation AB.

68. The defendant is engaged in a pattern of conduct with respect to its mortgage servicing practices whereby the defendant seeks to create a false or bogus default so that they can foreclose on a property for the purpose of either equity stripping, fee harvesting or claiming various insurance coverage(s) that are available for servicers who foreclose on a property.

69. Chase is engaged in a pattern and practice of conduct which is designed to create or manufacture false defaults for the purpose of churning fees and charges on borrowers, such as the Plaintiff, mortgage accounts to increase profits from these fees and charges including property inspections, broker price opinions and various force-placed insurance products.

70. Chase's conduct is oppressive, wanton, malicious and intentional, and is designed to profit it at the expense of the borrowers' homes.

71. As a direct and proximate result of the actions by Chase, Plaintiff has been injured and damaged as alleged herein and demand such a sum of damages as a jury deems reasonable and may award.

## COUNT I
## WANTONNESS

72. The Plaintiff realleges all prior paragraphs as if set out here in full.

73. Chase engaged in wanton conduct in that:

   a. Chase instituted procedures which were designed to cause the Plaintiff's home loan to be declared in default including failing to apply the payoff received from State Farm to the balance of the mortgage as required by terms of the mortgage and in conformity with industry and regulatory standards including Regulation AB and the uniform standards and accounting principles of the Mortgage Banker's Association.
   b. This was done for the purpose of imposing fees and charges to the account which could then be claimed from the Plaintiffs.
   c. This conduct was wanton in that Chase knew or should have known that by manufacturing a default and imposing bogus or illegal fees against the borrowers that injury would result to the mortgagors in the form of payment of illegal or unauthorized fees or in the loss of the mortgagors' property through foreclosure.

74. The acts of Chase were oppressive, malicious and intentional, and done with full knowledge that the Plaintiff would suffer harm as a result.

75. As a proximate consequence of these actions:
   a. Plaintiff has suffered harm in that she has been unable to secure a mortgage on reasonable terms for borrowers with their true credit profile,
   b. she has suffered embarrassment, humiliation and shame after being denied credit for such simple items as a revolving charge account that occurred because of this conduct,
   c. Chase has sought illegal, unauthorized and bogus fees and charges, and

9

    d. she has suffered mental anguish and emotional distress as well as the further emotional injury of losing their unborn child due to a miscarriage because of the conduct of Chase.

WHEREFORE, premises considered, the Plaintiff demands judgment against Chase in such an amount of compensatory and punitive damages as a jury deems reasonable and may award after a trial on the merits of this action.

## COUNT II
## NEGLIGENCE

76. The Plaintiff adopts and realleges all prior paragraphs as if set out here in full.

77. The actions of Chase were negligent in that it failed to properly apply and post payments to Plaintiff's mortgage loan when received and in the proper amounts.

78. Chase wrongfully placed payments into suspense rather than applying the payments to the Plaintiff's mortgage loan.

79. Chase placed charges onto the account of the Plaintiff that were either wrong, illegal, unauthorized or in a wrong amount and failed and/or refused to correct the account.

80. Chase reported to credit reporting bureaus that the Plaintiff's loan had been foreclosed upon and that the Plaintiff was in default, all of which were untrue and known to be false by the defendant.

81. As a proximate result thereof, the Plaintiff has been injured and damaged in that she has suffered financial hardship, mental anguish and emotional distress and has been charged and assessed amounts that were illegal, wrong, unauthorized or otherwise incorrect.

WHEREFORE, premises considered, the Plaintiff demands judgment against Chase in such an amount of compensatory and punitive damages as a jury deems proper and may award.

## COUNT III
## BREACH OF CONTRACT
### (THE MORTGAGE)

82. The Plaintiff adopts and realleges all prior paragraphs as if set out here in full

83. The Plaintiff and Chase are parties to a contract in the form of the mortgage that exists between them.

84. The Plaintiff alleges that Chase has breached the terms of the mortgage agreement by applying to their account charges that are not reasonable, not necessary, illegal, unauthorized, wrong in nature or amount and or otherwise manufactured by Chase for the purposes of creating a default.

85. The Plaintiff further alleges that Chase has breached her mortgage by accepting the payoff of her mortgage from State Farm but failing and refusing to apply the payoff funds to the mortgage loan in breach of the mortgage payment covenant in the mortgage and the applicable industry and regulatory standards.

86. As a proximate result of this breach, Chase is liable to the Plaintiff for all natural, proximate and consequential damages that are a result of this breach.

WHEREFORE, premises considered, the Plaintiff demands judgment against Chase in such an amount of damages as a jury deems reasonable and may award.

## COUNT IV
## UNJUST ENRICHMENT

87. The Plaintiff adopts and realleges all prior paragraphs as if set out here in full.

88. The actions of Chase in retaining their payoff funds but not applying them to the mortgage account resulted in extracontractual unjust enrichment in that Chase was able to reap interest on the Plaintiff's monies

for their own benefit to which Chase was not entitled under any express contract between the parties.

89.     As a result of Chase's conduct, the Plaintiff has been injured and damaged and Chase has been unjustly enriched.

90.     The Plaintiff claims all damages allowable under law as a result of Chase's wrongful conduct.

WHEREFORE, premises considered, the Plaintiff demands judgment against Chase in such an amount of compensatory and punitive damages as a jury deems reasonable and may award.

## COUNT V
## WRONGFUL FORECLOSURE

91.     The Plaintiff adopts and realleges all prior paragraphs of the complaint as if set out here in full.

92.     Chase instituted a foreclosure action against the Plaintiff despite the fact that it was paid in full for the mortgage loan by State Farm.

93.     As detailed in this complaint, the foreclosure was either negligent or wanton, depending on evidence adduced at trial, in that the foreclosure was a direct result of Chase failing to apply the payoff to the mortgage account and seeking charges and fees that were illegal, improper, unauthorized and in violation of law in such a manner that a default was manufactured or contrived for the purpose of generating fee income to Chase.

94.     As a direct result of these acts, the Plaintiff was injured and harmed in that she has suffered financial hardship, mental anguish and emotional distress and has been charged and assessed amounts that were illegal, wrong, unauthorized or otherwise incorrect, they have been defamed and slandered in the credit reporting of the defendant and have suffered humiliation, shame and embarrassment.

WHEREFORE, premises considered, the Plaintiff demands judgment against Chase in such an amount of compensatory and punitive damages as a jury deems proper and may award.

## COUNT VII
## TRUTH IN LENDING ACT

95. Plaintiff adopts and realleges all prior paragraphs of the complaint as if fully set forth herein.

96. Chase was required by 15 U.S.C. § 1639f to promptly credit the Plaintiff's account with the payoff funds, continued to fail to do so for more than five (5) months.

97. Chase failed to apply the payoff funds to the Plaintiff's account for more than five (5) months after receipt of the funds, despite numerous telephone calls, faxes, correspondence from counsel as required.

WHEREFORE, premises considered, the Plaintiff demands judgment against Chase in such an amount as a jury deems proper for actual and compensatory damages, and statutory damages for each violation, attorneys fees and costs of this action.

## COUNT VII
## SLANDER/DEFAMATION

98. Plaintiff readopts and realleges all prior paragraphs of the complaint as if fully set forth herein.

99. Chase made false, slanderous and defamatory statements about the Plaintiff. Specifically, Chase has reported negative credit information to credit reporting agencies concerning the Plaintiff with knowledge that said information was incorrect and false for more than nine (9) months.

100. Such untruthful information was disseminated in a negligent, wanton and/or willful manner without regard for the rights of the Plaintiff.

101. Plaintiff has been substantially injured as a proximate result of Chase's conduct in that Plaintiff's character and reputation have been adversely affected, the Plaintiff has been prevented from obtaining financing (or has been charged excess rates to obtain financing) and has otherwise been caused to suffer economic loss.

**WHEREFORE,** the Plaintiff, having set forth their claims for relief against Chase respectfully prays of the Court as follows:

A. That the Plaintiff have and recover against Chase a sum to be determined by a jury in the form of actual damages;

B. That the Plaintiff have and recover against Chase a sum to be determined by a jury in the form of punitive damages;

C. That the Plaintiff have such other and further relief as the Court may deem just and proper.

**THE PLAINTIFF REQUESTS A TRIAL BY STRUCK JURY ON ALL ISSUES SO TRIABLE.**

Dated this the 30th day of September, 2011.

/s/ D.W. Grimsley Jr.
State Bar No: ASB-7258-r71d

/s/ Tammy C. Woolley
State Bar No: ASB-6204-E67T
ATTORNEYS FOR PLAINTIFF

OF COUNSEL:
**WOOLLEY, EDGE & GRIMSLEY, LLC**
21 South Section Street
Fairhope, Alabama 36532
Office: 251-866-6747
Fax: 251-281-0369
Email: dwgrimsleyjr@me.com
tammy766@gmail.com

/s/ Nick Wooten
OF COUNSEL FOR PLAINTIFF

OF COUNSEL:
Mr. Nick Wooten
WOOTEN LAW FIRM, LLC
P.O. Box 3389
Auburn, Al. 36831
(334) 887 3000
Fax: 334 821 7720
nhwooten@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 30th day of September, 2011, I served the foregoing via electronic mail as follows:

Sandy G. Robinson
**CABANISS, JOHNSTON, GARDNER, DUMAS & O'NEAL, LLP**
63 South Royal Street
Mobile, Alabama 36655

Michael E. Turner
**CABANISS, JOHNSTON, GARDNER, DUMAS & O'NEAL, LLP**
2001 Park Place North, Suite 700
Birmingham, Alabama 35203

/s/ D.W. Grimsley, Jr.
OF COUNSEL